In the Matter of Gary
WAGNER, Debtor.

Bankruptcy No. 2–89–00915.

United States Bankruptcy Court,
D. Connecticut.

June 6, 1990.

David C. Smith, Ankerman & Smith,
West Hartford, Conn., for Town of Stafford, Conn., creditor.

Edward Muska, Stafford Springs, Conn.,
for debtor.

## MEMORANDUM AND ORDER RE: DEBTOR'S MOTION TO DISALLOW CLAIM

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The contested matter before the court in this chapter 11 case is the debtor's objection to a claim for $6,000.00 filed by the Town of Stafford, Connecticut (Town). The Town asserts as the ground of the debtor's liability the provisions of § 8–270 of the Connecticut Uniform Relocation Assistance Act (URAA). *See* Conn.Gen.Stat. § 8–266 *et seq.* The debtor contends that no statutory basis exists for the Town's claim and that it should be disallowed in its entirety.

### II.

### BACKGROUND

Gary Wagner, the debtor in possession (debtor), filed a chapter 11 petition on June 14, 1989, at which time he owned and managed a three-family building located at 106 High Street, Borough of Stafford Springs, Connecticut (the property). On or about December 7, 1988, the Town's building inspector, Floyd Baxter, had conducted an inspection of the property following tenant complaints. Baxter concluded that the property was in a safe condition for occupancy, but that minor electrical work and repair of a furnace were required. He so notified the debtor who agreed to make the repairs. The debtor contacted a heating contractor who, after inspection, advised the debtor that a new burner for the furnace was necessary. It was the end of December 1988 before the debtor contracted for the burner installation.[1] Baxter, in reinspecting the property on or about January 6, 1989, discovered that the still-unrepaired furnace was emitting fumes harmful to the first-floor tenants. Baxter then

---

1. The Town does not claim that the notice given to the debtor by Baxter to make repairs stipulated any time within which the repairs were to be made.

posted a sign on the first floor which stated:

DANGER

This Structure Is Declared Unsafe For Human Occupancy or Use. It Is Unlawful For Any Person To Use Or Occupy This Apartment After Jan 7, 1989. Any Unauthorized Person Removing This Sign Will Be Prosecuted.

| | |
|---|---|
| 106 High Street | /s/Floyd Baxter |
| Address of Building | Code Official |

Code Bldg Art. 100 Sec. 104.2, 117.1, 120.1, 120.-3.

Date Jan. 6, 1989   Refer To Ordinance No. ___

The first-floor tenants moved out after the posting of this sign and prior to January 10, 1989.

Baxter returned to the property on January 11, 1989 and posted a second sign, identical to the first except that it referred to "This Building" rather than "This Apartment;" it was dated January 11, 1989 and declared the structure unfit for occupancy after "Jan 11, 1989." The second-floor occupants moved out on January 11, 1989, and the third-floor occupants, who apparently had left before January 10, 1989, removed their belongings at the end of January.

The debtor's contractor completed the repairs to the furnace on January 14, 1989, and Baxter, after reinspecting the property on January 24, 1989, gave the debtor a letter stating that the "Apartments ... have passed inspection ... and now can be used for occupancy." The debtor thereafter continuously has rented out the property.

The Town, on March 22, 1989, filed a "Certificate of Lien" on the Stafford Land Records stating that "[whereas], the Town ... is liable for relocation assistance as

provided under Section 8–270 of the Connecticut General Statutes" and the tenants at the property have made a claim for such assistance, that any relocation assistance given by the Town would constitute a lien on the property in favor of the Town. On July 12, 1989, the Town filed a second Certificate of Lien which set the amount of the lien at $6,000.00. Both certificates were attached to the Town's proof of claim but, at the hearing on the debtor's objection to the claim, the Town offered no testimony on how the $6,000.00 amount was arrived at.

### III.

### DISCUSSION

In general, the URAA requires that persons displaced as a result of state and local agencies' land acquisition programs, by building code enforcement activities or by a program of voluntary building rehabilitation receive relocation assistance, including monetary benefits.[2] Conn.Gen.Stat. § 8–270, on which the Town rests its claim for reimbursement of the $6,000.00 it paid the tenants who left the debtor's property, states:

§ 8–270. *Additional payment for persons displaced from dwelling. Landlord's responsibility in certain cases*

In addition to amounts otherwise authorized by this chapter, a state agency shall make a payment to or for any displaced person displaced from any dwelling not eligible to receive a payment under section 8–269 which dwelling was actually and lawfully occupied by such displaced person for not less than ninety days prior to the initiation of negotiations for acquisition of such dwelling under the program or project which results

---

**2.** *Conn.Gen.Stat. § 8–266. Short title. Purpose. Policy*

This chapter shall be known as the uniform relocation assistance act. The purpose of this chapter is to establish a uniform policy for the fair and equitable treatment of persons displaced by the acquisition of real property by state and local land acquisition programs, by building code enforcement activities, or by a program of voluntary rehabilitation of

buildings or other improvements conducted pursuant to governmental supervision. Such policy shall be uniform as to (1) relocation payments, (2) advisory assistance, (3) assurance of availability of standard housing, and (4) state reimbursement for local relocation payments under state assisted and local programs.

Conn.Gen.Stat.Ann. § 8–266 (West 1989).

in such person being displaced. Such payment shall be either (1) the amount necessary to enable such displaced person to lease or rent for a period not to exceed four years, a decent, safe, and sanitary dwelling of standards adequate to accommodate such person in areas not generally less desirable in regard to public utilities and public and commercial facilities, and reasonably accessible to his place of employment, but not to exceed four thousand dollars, or (2) the amount necessary to enable such person to make a downpayment, including reasonable expenses incurred by such displaced person for evidence of title, recording fees, and other closing costs incident to the purchase of a decent, safe, and sanitary dwelling of standards adequate to accommodate such person in areas not generally less desirable in regard to public utilities and public and commercial facilities, but not to exceed four thousand dollars, except that if such amount exceeds two thousand dollars, such person must equally match any such amount in excess of two thousand dollars in making the downpayment, and provided, whenever any tenant in any dwelling unit is displaced as the result of the enforcement of any code to which this section is applicable by any town, city or borough or agency thereof, the landlord of such dwelling unit shall be liable for any payments made by such town, city or borough pursuant to this section or by the state pursuant to subsection (b) of section 8–280, and the town, city or borough or the state may place a lien on any real property owned by such landlord to secure repayment to the town, city or borough or the state of such payments, which lien shall have the same priority as and shall be filed, enforced and discharged in the same manner as a lien for municipal taxes under chapter 205.

Conn.Gen.Stat. Ann. § 8–270 (West 1989). *Dukes v. Durante*, 192 Conn. 207, 471 A.2d 1368 (1984) is the primary authority in Connecticut interpreting the provisions of the URAA. *Dukes* decided that not only building code but also housing code enforcement activities cover persons who are displaced by such activities, notwithstanding the URAA's sole use of the words: "building code." Building codes regulate erection and alteration of structures, while housing codes regulate maintenance of buildings already constructed. The *Dukes* court relied upon legislative history to support the providing of relocation assistance where "buildings ... decline to a point of condemnation." *Id.* at 217, 471 A.2d at 1374. However, the court emphasized that "[e]very housing code violation need not result in condemnation," and that agencies "can attempt to prevent the decay by requiring the landlord to make the necessary repairs." *Id.* at 220, 471 A.2d at 1376. In a footnote to this statement, the court added: "If these repairs result in a very short displacement, the URAA is not thereby triggered. Indeed, when the effect of the repairs is to render the buildings safe, decent and habitable, the purpose of the URAA is served without the aid of its benefits." *Id.* at 220 n. 11, 471 A.2d at 1376 n. 11.

On the record made in this proceeding, I find that the building inspector posted the entire property as unfit for occupancy on January 11, 1989 due to a temporarily malfunctioning furnace burner; that the debtor caused the repairs to be made by January 14, 1989; and that the Town authorized full occupancy of the property on January 24, 1989. I conclude that within the meaning of the URAA, the Town did not "condemn" the property of the debtor so as to make the debtor liable to reimburse the Town for monies it paid out to the tenants. The record is bare of any basis for determining why the Town paid out the monies it did, although the debtor does not dispute the monies were, in fact, paid.

### IV.

### CONCLUSION

An order will enter sustaining the debtor's objection to the Town's claim of $6,000.00 and disallowing the claim in its entirety.